**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OMAR WILLIAMS, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 17 C 5186 |
| | ) | |
| CITY OF CHICAGO, | ) | Judge Virginia M. Kendall |
| MARCO GARCIA, and | ) | |
| DONALD HILL, | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION & ORDER**

On April 16, 2021, a jury returned a verdict for Plaintiff Omar Williams on one of his three claims brought against Defendants City of Chicago, Marco Garcia, and Donald Hill (together, the "Defendants"). Specifically, the jury found Hill and Garcia independently liable for Williams' unlawful pretrial detention. (Dkt. 373 at 1). Conversely, the jury found in Defendants' favor on Plaintiff's malicious prosecution and conspiracy claims. (*Id.* at 2). The jury ultimately awarded Williams $100,000 in compensatory damages but denied punitive damages. (Dkt. 373 at 3). Williams now moves for an award of $804,429.25 in attorneys' fees and 17,657.75 in costs. (Dkt. 403 at 11). For the reasons set forth herein, Plaintiff's petition [374, 403] is granted in part and denied in part. In addition, the parties' motions seeking extensions of time [380, 396] and for leave to file motions instanter [395, 397] are granted.

**I.  Attorneys' Fees**

Under 42 U.S.C. § 1988, in an action to enforce a provision of 42 U.S.C. § 1983, the court may allow the prevailing party a reasonable attorney's fee as part of the costs. This fee-shifting law is designed to ensure "effective access to the judicial process" for persons with civil rights

grievances. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Plaintiffs are considered "prevailing parties" for attorney's fees purposes "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433.

In calculating a reasonable fees award, courts first calculate a "lodestar" amount by multiplying the attorneys' hours on the case by a reasonable hourly rate. *See Hensley*, 461 U.S. at 433; *Murphy v. Smith*, 864 F.3d 583, 586 (7th Cir. 2017); *Johnson v. GDF, Inc.*, 668 F.3d 927, 929–30 (7th Cir. 2012); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640–43 (7th Cir. 2011). After calculating the lodestar figure, the Court may then adjust the amount upward or downward depending on a variety of factors – such as the litigant's degree of success, the novelty and difficulty of the issues, and awards in similar cases. *Hensley*, 461 U.S. at 430 n.3, 434; *Estate of Enoch* ex rel. *Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). Although only disputed matters are discussed in this opinion, the court has reviewed all of the materials submitted by the parties in reaching its conclusions.

## A. Calculating the Lodestar

The lodestar is determined by calculating the number of hours reasonably expended and multiplying that number by a reasonable hourly rate for each moving attorney. *Hensley*, 461 U.S. at 433. "An award of the originally calculated lodestar is presumptively reasonable, and it is the City's burden to convince [the court] that a lower rate is required." *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007) (citations omitted). Plaintiff's request is summarized as follows:

| Individual | Hours | Hourly Rate | Total |
|------------|-------|-------------|-------|
| Paul K. Vickrey | 803.25 | $525 | $421,706.25 |
| Patrick F. Solon | 234.3 | $485 | $113,635.50 |
| Gretchen L. Schmidt | 412.6 | $250 | $103,150.00 |
| Dylan M. Brown | 676.5 | $225 | $152,212.50 |
| Nicholas Niro | 109.80 | $125 | $13,725.00 |
| **Total** | 2236.45 | | $804,429.25 |

(Dkt. 403 at 2).

2

### 1. Hours Reasonably Expended

What qualifies as a "reasonable" use of a lawyer's time "is a highly contextual and fact-specific enterprise," and as such, the court has "wide latitude" in awarding attorney's fees. *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (citation omitted) (internal quotation marks omitted). The court considers whether hours are "excessive, redundant, or otherwise unnecessary" and may reduce the lodestar calculation, for example, for hours spent on unrelated and unsuccessful claims, hours attorneys would not bill to their clients, and hours for which the prevailing party has failed to provide adequate support. *Hensley*, 461 U.S. at 433–34.

### i. Block Billing

Defendants take issue with the attorneys' billing practice of "simply list[ing] various tasks completed in a single day, without any delineation of which task took what amount of time." (Dkt. 408 at 15 (further arguing that "a majority of the entries" are block billed); *see also* Dkt. 408-3 (presenting all of Plaintiff's attorneys' billed hours along with Defendant's objections)). Plaintiff represents that the fees petition includes over 1,250 time entries representing nearly five years of work – and that Defendants object to 238 of these entries as block billed, far short of the "majority" of the time entries. (Dkt. 410 at 6; *see also* Dkt. 408-3). "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Tr.*, 433 F.3d 558, 569 (7th Cir. 2006); *see also, e.g.*, *Brzowski v. Sigler*, No. 17-cv-9339, 2021 WL 4283206, at *9 (N.D. Ill. Sept. 21, 2021); *Gibson v. City of Chi.*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012). The Court is not also "obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness." *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738 (7th Cir. 2010). Defendants' objections are therefore overruled.

### ii. Clerical Tasks

Defendants also assert that Williams has impermissibly billed for secretarial work. (Dkt. 408-1). "In calculating the number of hours reasonably expended on a case, courts should disallow time spent on what are essentially clerical or secretarial tasks." *E.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, [much less an attorney rate] regardless of who performs them."); *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) (concluding that "organizing file folders, document preparation, and copying documents" were clerical or secretarial tasks); *see also, e.g.*, *Cloutier v. GoJet Airlines, LLC*, No. 16-cv-1146, 2019 WL 5260756, at *4 (N.D. Ill. Oct. 17, 2019); *Morjal v. City of Chi., Ill.*, No. 12-cv-185, 2013 WL 2368062, at *2 (N.D. Ill. May 29, 2013). In determining whether an entry includes a clerical or secretarial task, the Court must consider whether the task was sufficiently complex enough to justify the use of non-clerical staff. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996)

The Court agrees with Defendants that several of the challenged time entries involve secretarial tasks. The Court will also exclude entries for time spent "organizing files . . . or copying, formatting, processing, or preparing documents." *See, e.g.*, *Cloutier*, 2019 WL 5260756, at *4; *Morjal v. City of Chi., Ill.*, 2013 WL 2368062, at *2. The following entries will be excluded from the final award:

| Date | Individual | Description | Time Billed |
|---|---|---|---|
| 6/20/2018 | Brown | Organizing files for production | 0.8 |
| 7/27/2019 | Brown | Organize defendants officer's discovery responses . . . outstanding and future requests; confer with team. | 1 |
| 9/24/2018 | Brown | Organize documents for our supplemental production; confer with PKV re same | 2.3 |
| 9/28/2018 | Brown | Prepare and serve grand jury transcripts on opposing Counsel | 0.5 |
| 1/16/2019 | Brown | Finalize and send D. Hill exhibits to court reporter. | 1 |
| 9/16/2019 | Brown | Review Judge Kendall's document regarding hyperlink for summary judgment. | .3 |

| 9/19/2019 | Brown | Pull and organize exhibits for summary judgment briefing. | 3 |
|---|---|---|---|
| 9/27/2019 | Solon | Troubleshooting filing issues on ECF of papers with hyperlinks. | 0.4 |
| 10/1/2019 | Brown | Finalize courtesy copies of 56.3 documents for the Court | 1 |
| 3/24/2021 | Brown | Continue organization of paper exhibits and video exhibits for trial | 1.2 |
| 4/1/2021 | Brown | Confer with Lynn Kandziora and U.S. Marshall Steve Linder re 285 form and service of trial subpoena | 1 |
| 4/1/2021 | Brown | Update plaintiff's exhibits | 3.5 |
| 4/1/2021 | Niro | Preparing a list of Plaintiff's exhibits | 0.8 |
| 4/2/2021 | Niro | Compiling Plaintiff's exhibits and creating Plaintiff's exhibit binders to be used/referenced during trial; preparing a list of exhibits | 5.2 |
| 4/2/2021 | Niro | Updating defendant's exhibits submitted later due to "technical glitches" as expressed by Defendant's counsel | 1.4 |
| 4/2/2021 | Niro | Preparing a list of Defendant's exhibits | 1.2 |
| 4/2/2021 | Niro | Compiling Defendant's Exhibits and creating Defendant's Exhibits binders to be used/referenced during trial; preparing a list of Defendant's exhibits | 4.6 |
| 4/3/2021 | Niro | Updating additional exhibits submitted by Defendant's counsel, to Defendant's exhibit binder. | 2.2 |
| 4/6/2021 | Brown | Finalize exhibits for opening statement and first witness | 4 |
| 4/8/2021 | Niro | Retrieving and delivering important documents to the court | 0.8 |
| 4/9/2021 | Solon | Attending morning session of trial and assisting in scheduling of witnesses including Deacy appearance pursuant to subpoena. | 3 |
| 4/9/2021 | Niro | Retrieving and delivering important documents to the court | 1 |
| 4/12/2021 | Niro | Retrieving and delivering important documents to the court | 0.8 |
| 4/13/2021 | Niro | Retrieving and delivering important documents to the court | 0.6 |
| 4/14/2021 | Niro | Retrieving and delivering important documents to the court | 0.6 |
| 4/15/2021 | Niro | Retrieving and delivering important documents to the court | 0.6 |

Accordingly, Brown's billable hours will be reduced by 19.6; Niro's by 19.8; and Solon's by 3.4.

### iii. *Vague Entries*

Defendants next argue that approximately seventy of the time entries are "so vague that the nature of the work cannot be determined." (Dkt. 408 at 19). They specifically highlight 17.25 hours that Brown billed to "updat[ing] discovery responses" and question whether this work "involved legal, paraprofessional or clerical work." (*Id.*). Other entries challenged as vague

5

include descriptions such as "[p]repare first amended complaint draft," (Dkt. 408-3 at 12), "[u]pdate draft discovery responses," (*id.* at 14), and "[w]orking on motion and reply," (*id.* at 28). Another entry challenged as vague was Schmidt's time spent "[p]reparing for trial." (*Id.* at 62). Although such entries do not articulate the *specific* legal tasks being performed, the Court ultimately finds these entries to be sufficiently linked to work of a legal nature. The challenges entries will not be excluded.

### iv. Excessive Entries

Finally, Defendants challenge certain time entries as "patently excessive" because Plaintiff's attorneys billed in quarter-hour increments. (Dkt. 408 at 19). Defendants concede that there is no per se rule regarding proper billing increments. (*Id.* (citing *Schulten v. Astrue*, No. 08-cv-1181, 2010 WL 2135474, at *5 (N.D. Ill. May 28, 2010))). *See also, e.g.*, *Garcia v. R.J.B. Props., Inc.*, 756 F. Supp. 2d 911, 918 (N.D. Ill. 2010) ("[A] number of district judges within this circuit have considered the matter and, in the main, have found 'nothing inherently objectionable' about the practice [of billing in quarter-hour increments]."). In addition, Defendants have refused to provide their own time entries for the Court's review, (*see* Dkt. 403 at 3; Dkt. 410 at 8), which could have aided in the determination of whether Plaintiff's attorneys spent an unreasonable amount of time preparing their case. *See also, e.g.*, *Delgado v. Mak*, No. 06-cv-3757, 2009 WL 211862, at *7 (N.D. Ill. Jan. 29, 2009) ("[I]f Defendants had been able to demonstrate that they performed similar tasks with similar results in substantially less time, the Court may well have reduced or eliminated certain entries from the lodestar."); *O'Sullivan v. City of Chi.*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007) (rejecting claim challenged time entries were excessive where Defendant City of Chicago "offered no objective standard, no 'reasonable number of hours to

spend on a given activity, with which to compare" to Plaintiff's fee request). The Court will thus include the challenged entries in the lodestar.

### 2. Reasonable Hourly Rates

To determine the appropriate hourly rate for attorneys' fees under § 1988, the Court considers "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). A key reference point for ascertaining the market rate is the "amount charged by attorneys of comparable skill, experience, and reputation for similar work." *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007); *McNabola v. Chi. Trans. Auth.*, 10 F.3d 501, 519 (7th Cir. 1993) (explaining that the market rate can be determined by the "rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question"). To be considered similar enough to be a reference point, the work cannot be "radically different." *E.g.*, *Duran v. Town of Cicero*, No. 01-cv-6858, 2012 WL 1279903, at *16 (N.D. Ill. Apr. 16, 2012) (finding that an attorney's previous work in finance, cross-border transactions, private investment company matters, and merger and acquisitions "radically different" from § 1983 litigation). Third-party affidavits attesting to the billing rates of comparable attorneys are instructive in this inquiry, *Pickett*, 664 F.3d at 640 (7th Cir. 2011), although an attorney's own "self-serving affidavit attesting to a market rate" is unlikely to suffice on its own, *e.g.*, *Edwards v. Rogowski*, No. 06-cv-3110, 2009 WL 742871, at *4 (N.D. Ill. Mar. 18, 2009). The Court may refuse to credit affidavits deemed overly general or which do not specifically address fees in like cases. *Nichols v. Ill. Dep't of Transp.*, 4 F.4th 437, 442 (7th Cir. 2021).

#### i. Attorney Vickrey

Williams seeks an hourly rate of $525 per hour for Vickrey's services. (Dkt. 403 at 3). Vickrey has 41 years of litigation experience, and he has focused his practice on intellectual

property and business torts. (*Id.*). Vickrey's declaration and supporting documentation show that he has some experience handling civil rights matters. (*Id.* at 1–3 (citing more than ten civil rights-related cases that Vickrey has litigated); *see also* Dkt. 403-4; Dkt. 403-5; Dkt. 403-6). Vickrey has filed four civil rights actions since 2017, though the current matter is the first that proceeded to trial. (Dkt. 408 at 10).

Plaintiff provides two third-party affidavits in support of Vickrey's proposed rate. Attorney Kenneth Flaxman, who supplied one such affidavit in support of the $525 rate, has litigated over 700 civil rights cases throughout the past 48 years. (Dkt. 403-11 at 5). Flaxman has also argued five cases before the United States Supreme Court, and has served as lead or co-counsel in "many class actions and individual civil rights cases." (*Id.*). Flaxman's billing rates have ranged from $575 per hour in 2006 to $750 per hour in the present day. (Id. at 4). Attorney H. Candace Gorman also submitted an affidavit in support if Vickrey's proposed fee. (Dkt. 403-10). Gorman was admitted to the Illinois Bar in 1983. (*Id.* at 1). Her practice is focused on public interest and civil rights litigation and she has been a solo practitioner for her entire career. (*Id.* at 1). In 2017, more than thirty years into her career as a public interest lawyer, Gorman was awarded $500 per hour in a civil rights case – a lower hourly fee than what Vickrey now seeks. (*Id.* at 3).

Rates charged in similar cases are also instructive here. In *Johansen v. Wexford Health Sources*, No. 15-cv-2376, 2021 WL 1103349 (N.D. Ill. Mar. 23, 2021), the lead attorney requested a rate of $600 per hour. *Id.* at *4. The attorney more than thirty years of litigation experience and had appeared in over 200 cases – "all but one was classified as involving 'civil rights' claims." *Id.* The court considered these factors together with three supporting affidavits, among other things, and ultimately awarded a rate of $475 per hour. *Id.* at *5. In another case, an attorney with 29 years of experience, but only *some* background in civil rights litigation, was awarded $310 per

hour when he requested $350 per hour. *Obrycka v. City of Chi.*, No. 07-cv-2372, 2013 WL 1749803, at *3 (N.D. Ill. Apr. 23, 2013). Where an attorney had 39 years of relevant civil rights experience, a higher rate of $465 per hour was deemed appropriate. *Nelson v. Lis*, No. 09-cv-883, 2017 WL 1151055, at *4 (N.D. Ill. Mar. 28, 2017). In that same case, the court awarded $375 per hour to an attorney with "significant experience in other areas of law," but was not as developed in the area of civil rights litigation. *Id.*

Defendants suggest that an appropriate hourly rate for Vickrey is $320 per hour. (Dkt. 408 at 13). This is based on (1) Vickrey's "lengthy and accomplished legal career" in commercial and intellectual property litigation, (2) his relative inexperience in the police misconduct litigation, and (3) fees set by other courts in this jurisdiction. (*Id.* at 9–13).

Having review Vickrey's experience and credentials, as well as recent case law in this Circuit, the Court finds that an hourly rate of $425 is appropriate for Vickrey. This hourly fee appropriately reflects Vickrey's substantial litigation practice in the commercial and IP sectors and persuasive case law where the Court limited fee awards for attorneys with greater experience in civil rights litigation.

### ii. Attorney Solon

Plaintiff seeks an hourly rate of $485 for Solon. (Dkt. 403 at 4). Solon was admitted to practice in Illinois in 1991, and the focus of his practice today is business tort and intellectual property litigation. (*Id.* (further noting Solon's prior billing rate in those areas of law at $500 per hour)). Solon drafted briefs at the dispositive stages of this litigation as well as motions *in limine*. (*Id.*). In addition, the Vickrey Declaration explains that Solon assisted Vickrey in developing opening and closing jury addresses and strategized witness examinations. (Dkt. 403-3 at 4–5). The Flaxman Declaration encourages the Court to adopt Solon's proposed fee of $485 per hour,

claiming that it is lower than then market rate in this District for lawyers of comparable experience. (Dkt. 403-11 at 1). Defendants request the Court to limit his hourly rate to $260. (Dkt. 408 at 13). They argue that Solon was assigned tasks suited for a more junior attorney and emphasize his lack of experience in the relevant areas of law. (*Id.*).

The Court agrees that Plaintiff's requested hourly rate is not appropriate in this case. Although Solon has about 30 years of legal experience, Plaintiff points to only one civil rights matter that Solon helped litigate. (Dkt. 403-3 at 3). The record is otherwise silent as to any relevant experience Solon has in civil rights or police misconduct matters. Solon's legal experience is otherwise apparently limited to business and intellectual property cases. Thus, Defendants are correct that he is "not entitled to rates reserved for seasoned civil rights litigators." (Dkt. 408 at 13). Based on similar hourly rates granted in other cases, Solon's overall qualifications, and his work on this matter, the Court in its discretion reduces Solon's hourly rate to $285. *See, e.g.*, *Obrycka v. City of Chicago*, 2013 WL 1749803, at *3 (explaining that courts in this district have approved hourly rates ranging from $285 to $310 for trial attorneys with significant litigation experience but limited civil rights experience).

### iii. Attorney Schmidt

For Schmidt, Plaintiff requests an hourly rate of $250 per hour. (Dkt. 403 at 5). Schmidt has 8 years of experience and has "worked on several significant civil rights case," including an unlawful detention case. (*See id.* (citing Dkt. 403-3 at 2)). Plaintiff also claims that in the present case, Schmidt assisted in *voir dire*, helped in "addressing jury concerns," and aided Vickrey in preparing his opening and closing statements and witness examination outlines. (Dkt. 403 at 5). Finally, Plaintiff refers the Court to *Fields v. City of Chicago* in support of this requested rate, where the Court approved a rate of $325 per hour for attorneys with about eight years of litigation

experience. *Fields*, 2018 WL 253716, at *3 (N.D. Ill. Jan. 1, 2018). Defendants argue for a reduced fee of $200 for Schmidt. (Dkt. 408 at 13). They argue that she was "noticeably underutilized" in that she did not examine any witness at trial and further note that this was her first civil rights trial. (*Id.*). However, in light of Schmidt's years of litigation experience, similar hourly rates granted in other cases, and the complete record now before the Court, Plaintiff's requested rate of $250 per hour is reasonable.

### iv. Attorney Brown

Brown's requested rate is $225 per hour. (Dkt. 403 at 5). Brown has nearly ten years of litigation experience, and Plaintiff has submitted evidence of numerous civil rights cases in which he has been involved. (*Id.*). Brown provided significant assistance with discovery in this case and examined a witness at trial among other things. (*Id.*). Defendants again argue that Brown was "noticeably underutilized" at trial and notes that this was Brown's first civil rights trial. (Dkt. 408 at 13). Defendants fail to rebut evidence adduced by Plaintiff concerning Brown's litigation experience – including his involvement in civil rights matters – and fails to rebut the persuasive value of *Fields*, 2018 WL 253716, where an attorney with a similar level of experience was in fact granted a higher billing rate of $325 per hour. Ultimately, the Court agrees that Brown's rate of $225 per hour is reasonable.

### v. Paralegal Niro

Niro, a paralegal, billed his time at $125 per hour. (Dkt. 403 at 6). Defendants argue that paralegals' time is non-compensable under Section 1988, which governs awards for reasonable *attorneys'* fees. (Dkt. 408 at 14). However, Courts in this jurisdiction have awarded fees for paralegals' work. For example, hourly rates of $125 and $150 were approved for paralegals in *Fields v. City of Chi.*, No. 10-cv-1168, 2018 WL 253716, at *4–5 (N.D. Ill. Jan. 1, 2018). In

11

*Blackwell v. Kalinowsk*, No. 09-cv-7257, 2012 WL 469962 (N.D. Ill. Feb. 13, 2012), the court approved $100 per hour as an appropriate rate for a paralegal, down from plaintiff's request for $125 per hour. *Id.* at *9. The *Blackwell* Court found that the requested $125 rate was unreasonable because the plaintiff failed to submit "sufficient information (such as [the paralegal's] years of paralegal experience) in order to justify this rate." *Id.* Similarly, in this case, Plaintiff provides scant information about Niro's background – noting only that he is a law school graduate and planned on taking the Illinois Bar Exam. (Dkt. 403 at 6). Following *Blackwell*, the Court awards Plaintiff a $100 per hour fee for Niro's work on this case. His time is compensable but the Court lacks sufficient documentation supporting a higher rate.

### 3. Total Lodestar Calculation

Based on the foregoing, the Court's revised lodestar calculation is as follows:

| Individual | Hours | Hourly Rate | Total |
|:---:|:---:|:---:|:---:|
| Paul K. Vickrey | 803.25 | $425 | $341,381.25 |
| Patrick F. Solon | 230.9 | $295 | $68,115.50 |
| Gretchen L. Schmidt | 412.6 | $250 | $103,150 |
| Dylan M. Brown | 656.9 | $225 | $147,802.50 |
| Nicholas Niro | 90 | $100 | $9,000 |
| **Total** | 2,193.65 | | **$669,449.25** |

### 4. Further Adjustments to the Lodestar Amount

The lodestar figure is the "starting point" in fee determinations and may by adjusted for a variety of factors. *Enoch*, 570 F.3d at 823. These factors include, among other things, "the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Offs. of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 856–57 (7th Cir. 1999). Furthermore, proportionality between the amount of fees sought and the amount of recovery obtained is a relevant factor; any fee award "should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed." *Moriarty v. Svec*, 233

F.3d 955, 968 (7th Cir. 2000); *see also Cole v. Wodziak*, 169 F.3d 486, 488–89 (7th Cir. 1999) (expressing view that fee award exceeding damages is rarely justified). Defendants argue for a reduction in the lodestar amount on several grounds. The Court addresses each of these factors in turn.

### i. *Degree of Success*

In adjusting the lodestar calculation, courts consider the "results obtained" in the litigation, which "becomes particularly significant in cases where a technically prevailing party succeeds on only some of his claims for relief." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). Williams originally filed a seven-count complaint against six defendants, (*see* Dkt. 1); three counts and three defendants ultimately proceeded to trial. Following a jury trial, the jury found for Williams only on his unlawful pretrial detention claim and for Defendants on his malicious prosecution and conspiracy claims. (Dkt. 373). Defendants argue that Plaintiff's unlawful pretrial detention claim was "insignificant in comparison to the overall goals here," which they content warrants a lodestar reduction. (Dkt. 408 at 22).

A prevailing plaintiff is not entitled to fees for time expended pursuing unsuccessful claims; however, when claims are related to one another, "time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee*, 142 F.3d at 413. When viewing attorney records of time spent, it is often difficult "to divide hours expended on a claim-by-claim basis." *Id.* (quoting *Hensley*, 461 U.S. at 435). When faced with partial success at trial, the Court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Sotoriva*, 617 F.3d at 975 (quoting *Hensley*, 461 U.S. at 436–37); *accord Alcazar-Anselmo v. City of Chi.*, No. 07-cv-5246, 2011 WL 3236024, at *7 (N.D. Ill. July 27, 2011). In this matter, the disparity between Plaintiff's

13

claims and his ultimate success at trial, limited to only a single count, merits a global reduction in the lodestar.

### ii. Proportionality

In fashioning a reasonable attorney's fee, proportionality is a particular concern; the court should employ "increased reflection before awarding attorneys' fees that are large multiples of the damages recovered or multiples of the damages claimed." *Moriarty*, 233 F.3d at 968 (noting, however, that there are no mechanical rules "requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered"); *but see Cruz v. Town of Cicero, Ill.*, 275 F.3d 579, 592 (7th Cir. 2011). Defendants argue in favor of a downward adjustment given the disproportionality between the fees sought and the amount of recovery. (Dkt. 408 at 23). Plaintiff essentially contends that the between the amount requested from the jury during closing arguments and the final jury verdict is irrelevant to the fee determination. (Dkt. 410 at 11). In this case, Plaintiff asked the jury to award him $5.25 million and received $100,000 – slightly under two percent of his requested amount. This low jury award indicates a disproportionate relation to the requested jury amount and is an element rightfully factored into any decrease in the lodestar calculation. *See Schlacher*, 574 F.3d at 856–57. In addition, the lodestar calculation of $669,449.25 is nearly seven times greater than the jury verdict of $100,000. Because the lodestar calculation is well in excess of what Williams recovered at trial, a reduction in the lodestar is appropriate given this Court's discretionary authority to do so based in part on proportionality. *Schlacher*, 574 F.3d at 856–57.

### iii. Public Interest

The Court also considers the public purpose served by plaintiff's suit, assessing principally whether plaintiff's "victory vindicat[ed] important rights and deterr[ed] future violations."

14

*Cartwright v. Stamper*, 7 F.3d 106, 110 (7th Cir. 1993). Plaintiff argues that his pursuit of the case successfully promoted the public interest. (Dkt. 410 at 13). Plaintiff asserts that through this litigation, he "established that the police kept a man in jail without probable cause for five years." (*Id.*). However, in nearly all Section 1983 cases where a plaintiff prevails, it can be observed that the public interest can be served by "exposing to light disturbing police malfeasance and grave municipal institutional failures." *Robinson*, 489 F.3d at 872; *see also* 42 U.S.C. § 1983. As such, this factor is not satisfied merely because a plaintiff establishes, as Williams did here, that his constitutional rights have been infringed. A more nuanced approach to the public interest is appropriate in a lodestar calculation. The Court considers, for example, where Plaintiff's victory "expos[ed] some deeper institutional problem within the department transcending the individual case." *See, e.g.*, *Ragland v. Ortiz*, No. 08-cv-6157, 2012 WL 4060310, at *7 (N.D. Ill. Sept. 14, 2012). Although Plaintiff regrettably suffered unlawful pretrial detention, the facts here are limited to his Plaintiff's particular case and the particular officers involved, and thus has minimal impact on the public interest at large. This, too, weighs in favor of a reduction in the lodestar.

### iv. Final Fees Award

The Court, in its discretion, finds it appropriate to reduce the lodestar amount by 35%. As such, Plaintiff is granted fees in the amount of $435,142.10. This reduction takes into account the foregoing analysis and credits the diligent work that Plaintiff's attorneys put forth on their client's behalf for nearly five years litigating this case.

## II. Fees and Costs

Federal Rule of Civil Procedure 54(d) provides, in relevant part, that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." *See* FED. R. CIV. P. 54(d). The Rule "provid[es] a strong presumption that the prevailing

party will recover costs." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997); *see also Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003); FED. R. CIV. P. 54(d)(1). This presumption, however, applies only to costs listed in 28 U.S.C. § 1920. *Winniczek v. Nagelberg*, 400 F.3d 503, 504 (7th Cir. 2005); *Sommerfield v. City of Chi.*, No. 06-cv-3132, 2017 WL 3675722, at *4 (N.D. Ill. Aug. 25, 2017). Section 1920, in turn, authorizes a party to recover the following "taxable" costs:

> (1) Fees of the clerk or marshal;
> (2) Fees of the printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title; [and]
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Only where it is immediately apparent that the costs were necessary and appropriate will the Court grant them due to the "narrow scope of taxable costs." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 572 (2012). "Taxable costs are limited to relatively minor, incidental expenses as is evident from § 1920, which lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts. Indeed, the assessment of costs most often is merely a clerical matter that can be done by the court clerk." *Id.* (citations omitted). Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chi.*, 218 F.3d 816, 824 (7th Cir. 2000). "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005).

That presumption does not, however, relieve the prevailing party of the burden of establishing that potentially recoverable costs it incurred were reasonable and necessary. *See, e.g.*, *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009); *Telular Corp. v. Mentor Graphics Corp.*, No. 01-cv-431, 2006 WL 1722375, at *1 (N.D. Ill. June 16, 2006). The district court's determination whether particular costs are reasonable and necessary is given considerable deference. *Weeks*, 126 F.3d at 945; *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 943 (7th Cir. 1988).

## A. Plaintiff's Requested Taxable Costs

Williams requests $17,657.76 in taxable costs. (*See* Dkt. 403 at 11; Dkt. 403-12). His request includes the following:

1. Copying expenses: $728.50
2. Court reporter fees for hearing transcripts: $319.50
3. Witness fee: $45.00
4. Deposition invoices: $5,876.15
5. Filing fee: $400.00
6. Lexis research invoices: $6,527.70
7. Overtime trial preparation by Legal Assistant Regalado: $1,194.39
8. Process service invoices: $896.50
9. Plaintiff's hotel expenses during trial: $1,489.68
10. Trial transcript fees: $429.30
11. Travel expenses to conduct a deposition: $52.50

(Dkt. 403-12). The Court will address each request in turn.

### 1. Copying Expenses

Copying costs are explicitly authorized by 28 U.S.C. §1920(4) when they are "necessarily obtained for use in the case." Even when costs are permitted by statute, the "cost must be. . . reasonable." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). The district court "has discretion to determine which copies were necessary." *Montanez v. Simon*, 755 F.3d 547, 558 (7th Cir. 2014). In order to recover copying costs, a party is required to "provide

the best breakdown of obtainable from retained records . . . and certainly enough information to allow the court to make a determination that the costs sought are, in fact, authorized by § 1920." *See, e.g.*, *Lally v. City of Chi.*, No. 10-cv-5011, 2013 WL 1984422, at *12 (N.D. Ill. May 13, 2013); *Shanklin Corp. v. Am. Packaging Mach., Inc.*, No. 95-cv-1617, 2006 WL 2054382, at *4 (N.D. Ill. July 18, 2006). Copies merely for an attorney's convenience are non-compensable. *Haroco, Inc. v. Am. Nat'l. Bank & Tr. Co. of Chi.*, 38 F.3d 1429, 1441 (7th Cir. 1994).

Williams requests $728.50 for copying expenses. (Dkt. 403-12 at 2). However, with respect to the first two line items for copying expenses, he failed to provide any details regarding, for example, how many pages were copied or what was copied. (Dkt. 403-12 at 2). Instead, the first two entries are simply billed as "Copying Expense[s]" for various dates. (*Id.*). As such, it is impossible to determine whether these charges were reasonable. Furthermore, while the final line item for copying expenses does include the number of pages copied, and notes that these pages were for Plaintiff's trial binder, it lacks any detail about <u>what</u> was copied. (*Id.*). Based on this record, the Court is unable to decide whether these copying costs are recoverable. *See, e.g.*, *Lally*, 2013 WL 1984422, at *12 (holding that a party could not recover copying costs identified only as "[c]opies and printing for trial prep"). Plaintiff is disallowed from recovering copying costs given the absence of the requisite specificity.

### 2. Court Reporter Fees

Section 1920(2) allows for recovery of court reporter fees and transcriptions "necessarily obtained for use in the case." Defendants do not contest awarding these expenses. Defendants are therefore ordered to pay Plaintiff's costs for Court hearing transcripts amounting to $319.50. (*See* Dkt. 403-12 at 2).

### 3. Thomas Deacy Witness Fee

Witness fees are expressly authorized by Section 1920(3). Courts in this jurisdiction have found witness fees between $40 and $55 per witness to be reasonable. *See Ayala v. Rosales,* No. 13-cv-04425, 2016 WL 2659553, at *5 (N.D. Ill. May 9, 2016) (finding witness fees of $50.88 per witness reasonable); *Dishman v. Cleary*, 279 F.R.D. 460, 466 (N.D. Ill. 2012) (deeming witness fees between $40 and $51.95 reasonable). As such, the Court awards Plaintiff $45.00 for the witness fee charged for Thomas Deacy.

### 4. Deposition Expenses

Deposition costs are authorized under Section 1920(2). *See also Weeks*, 126 F.3d at 945. Defendants dispute several of Plaintiff's claimed expenses on the basis that (a) they were unnecessary, and/or (b) Plaintiff failed to adduce sufficient documentation showing the reasonableness of the asserted costs. (Dkt. 408-7; Dkt. 395 at 5–7 (disputing the necessity of five depositions), 7–8 (disputing seven deposition costs lacking proper documentation)).

Necessity of the Challenged Depositions. In determining whether a deposition's costs can be taxed, "[t]he proper inquiry is whether the deposition was 'reasonably necessary' to the case at the time it was taken, not whether it was used in a motion or in court." *Nwoke v. Univ. of Chi. Med. Ctr.,* No. 20-cv-2242, 2021 WL 3483434, at *2 (7th Cir. Aug. 9, 2021) (citing *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 455 (7th Cir. 1998)). When deciding this, "introduction of a deposition at trial is not a prerequisite for finding that it was necessary to take the deposition," as long as the deposition was not "purely investigative in nature." *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243 (7th Cir. 1985), overruled on other grounds by *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258 (7th Cir. 1989). In *Cengr,* depositions were deemed reasonably

necessary because they were taken of individuals who witnessed the events giving rise to the plaintiff's claims. 135 F.3d at 455.

Defendants submit that Plaintiff's depositions of the following individuals were unnecessary: Julia Ramirez, Carol Maresso, Thomas Deacy, Charles Daly, and Henry Conforti. (Dkt. 395 at 5). Accordingly, they urge the Court to exclude $1,808.18 from Plaintiff's relevant expenses. (*Id.*).

To begin, Williams agreed to exclude the $160 claimed with respect to the Ramirez deposition, and so this amount will be deducted from his requested sum. (Dkt. 405 at 4). Next, Defendants argue that Maresso's deposition cannot be taxed as costs because Williams voluntarily dismissed her from the case. (Dkt. 395 at 6 (further noting that Maresso is thus the "prevailing party")). However, Maresso testified at trial and Plaintiff's counsel used her deposition transcript for impeachment. (Dkt. 4-5 at 3 (framing Maresso as a "key fact witness at trial")). As such, her deposition was necessary to the case. *See, e.g., Smith v. Chi. Transit Auth.*, No. 12-cv-8716, 2015 WL 2149552, at *5 (N.D. Ill. May 6, 2015) ("But, in this case, Mr. Smith's deposition was used both at summary judgment and at trial, and as in *Cengr*, was 'entirely reasonable' for the defendant in this case to order the transcripts of the plaintiff's deposition").

Defendants further argue that the claimed costs related to Deacy, Daly, and Conforti are non-compensable essentially because their depositions related to Plaintiff's failed malicious prosecution and conspiracy counts. (Dkt. 395 at 8–9; Dkt. 408 at 23 ("[M]ost of the depositions were unnecessary, geared as they were to the unsuccessful claim that the detectives surreptitiously investigated the deceased Keith Slugg as the prime murder suspect.")). Williams explains that these depositions sought information pertinent to his underlying criminal investigation, and whether probable cause existed at the time of his arrest. (Dkt. 405 at 3–4). The Court grants the

costs requested for these depositions because at the time they were taken, it was reasonable to believe that these individuals could have provided information probative of Plaintiff's claims he intended to pursue at trial. *See Nwoke*, 2021 WL 3483434, at *2. In addition, Deacy and Conforti testified at trial, (Dkt. 405 at 4), further supporting an award of the costs associated with their depositions.

      <u>Reasonableness of the Claimed Costs</u>. Defendants challenged certain requested transcription fees as unreasonable because Williams initially failed to adduce proper documentation substantiating his costs. (Dkt. 395 at 7–8 (challenging transcript fees associated with Maresso, Daly, Hill, Garcia, Deacy, and Goldish)). Williams provided additional documentation in response, which allows the Court to assess the reasonableness of his claimed fees. (*See* Dkt. 405-1). Still, Defendants maintain their objections to the following costs as unreasonable, (*see* Dkt. 395 at 8):

| Deponent | Claimed Cost |
|---|---|
| Carol Maresso | $334.35 |
| Charles Daly | $302.75 |
| Donald Hill | $543.70 |
| Marcio Garcia | $429.15 |
| Thomas Deacy | $252.70 |
| Megan Goldish | $572.50 |
| **Total** | **$2,435.15** |

(Dkt. 405 at 4).

      In general, prevailing parties can recover money spent on deposition transcripts, 28 U.S.C. § 1920(2), so long as the transcript was "necessarily obtained" and its cost did not exceed the "regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript . . . was filed." L.R. 54.1(b); *see also Cengr,* 135 F.3d at 456 ("The Judicial Conference rates apply to deposition charges by private court reporters."). The current regular copy rate, in effect since January 26, 2012, is $3.65 per page for original transcripts delivered

within 30 days. *See* https://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo (last accessed Mar. 31, 2022). Local Rule 54.1(b) also allows recovery of court reporter "appearance fees," which are capped at $110 where the court reporter was present for four hours or fewer. *See id.* Guided by these principles, the Court finds that Williams would be entitled to the following costs:

| Deponent | Number of Transcript Pages | Transcript Cost ($3.65 per page) | Court Reporter Hours Worked | Court Reporter Fee ($110 maximum) | Maximum Costs Allowed |
|---|---|---|---|---|---|
| Carol Maresso | 73 | $266.45 | 2 ($75/hr) | $110 | $376.45 |
| Charles Daly | 65 | $237.25 | 2 ($75/hr) | $110 | $347.25 |
| Donald Hill | 126 | $459.90 | 3.5 ($75/hr) | $110 | $569.90 |
| Marcio Garcia | 97 | $354.05 | 3.5 ($75/hr) | $110 | $464.05 |
| Thomas Deacy | 53 | $193.45 | 2 ($65/hr) | $110 | $303.45 |
| Megan Goldish | 135 | $492.75 | 3.5 ($65/hr) | $110 | $602.75 |
| | | | | Total: | $2,663.85 |

Plaintiff's total requested amount for his deposition transcript costs comes within this maximum reasonable allotment. (*See* Dkt. 405 at 4 (presenting Williams's request for $2,435.15 in transcript costs)). Defendants are ordered to reimburse Williams for the total amount he requested for the challenged transcript costs: $2,435.15.

**5. Filing Fee**

Williams paid $400.00 to file the Complaint in this case. This fee is recoverable as a "[f]ee[] of the clerk." 28 U.S.C. § 1920(1). Also, because the amount of the fee is set by this District and must be paid to file a case in this District, the fee is reasonable and necessary. Thus, Plaintiff is awarded the $400.00 cost to file its Complaint.

**6. Lexis Research Expenses.**

The cost of computerized legal research is generally compensable as part of an attorneys' fee award because the "added cost of [such] research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching." *Davis v. Budz*, No. 99-cv-

3009, 2011 WL 1303477, at *8 (N.D. Ill. Mar. 31, 2011) (citing *Haroco*, 38 F.3d at 1440). However, a party seeking recovery for research expenses must provide "information from which the court may determine whether the computerized legal research charges were reasonably incurred." *Williams v. Z.D. Masonry Corp.*, No. 07-cv-6207, 2009 WL 383614, at *5 (N.D. Ill. Feb.17, 2009) (disallowing electronic legal research costs where petition did not "describe what research was performed"); *see also Eng'd Abrasives, Inc. v. Am. Mach. Prods. & Serv.*, No. 13-cv-7342, 2015 WL 1281460, at *13 (N.D. Ill. Mar. 18, 2015) (same); *Harris N.A. v. Acadia Invs. L.C.*, No. 09-cv-6661, 2012 WL 1681985, at *8 (N.D. Ill. May 14, 2012) (same where plaintiff did not provide information regarding what attorneys charged for research or the nature and subject of the research); *Davis*, 2011 WL 1303477, at *8 (same where "[a]ll that Plaintiff here has offered is a list of dates on which legal research was purportedly performed and the dates on which WESTLAW billed for the service").

Williams requests $6,527.70 for his attorneys' research activities on Lexis. (Dkt. 403-12 at 3). Defendants argue that Plaintiff's Lexis charges should be disregarded because they are overly vague. (Dkt. 408 at 24–25 (noting Plaintiff's "overall failure to detail the nature of this research or how it applied to the litigation")). They highlight that of Plaintiff's eighteen Lexis charges, sixteen of them "lack *any* type of specificity," and the remaining two are also lack sufficient detail. (*Id.* (emphasis added); *see also* Dkt. 408-8 (compiling Plaintiff's Lexis charges)). For example, Plaintiff requests $1,124.34 for a February 28, 2021 Lexis invoice. (Dkt. 408-8 at 2). The description associated with this charge states: "Lexis Research Invoice #3093131256: Lexis Advance access charge and document access for U.S. cases." (*Id.*). Plaintiff provides no information regarding the nature, subject, or time expended on this research. The two relatively more detailed Lexis charges broadly indicate motions for which research was being performed and

relevant date ranges. For example, Plaintiff's September 30, 2017 charge was for "access [to] US cases re opposition to cities [sic] motion to bifurcate (9/27-9/28/2017)." (Dkt. 408-8 at 1). Because these charges lack sufficient detail regarding the subject of and time spent on the research, Williams cannot recover these costs.

### 7. Expenses for Legal Assistant's Overtime Work

Williams requests $1,194.39 for Legal Assistant Angelica Regalado's assistance with trial preparation. (Dkt. 403-12 at 3; Dkt. 410 at 15). The expense report provides no detail at all regarding what services Regalado performed. (*Id.*). Defendants argue that the Court should deny this expense given that Regalado is a non-attorney, and the nature of her overtime work is vague and undefined. (Dkt. 408 at 25). In Plaintiff's reply brief, he explained that Regalado "worked overtime during the trial on exhibits, witness outlines, and court filings." (Dkt. 408 at 15). Even still, Plaintiff's request lacks sufficient particularity. First, Plaintiff's claim for Regalado's work "during the trial" is confused by the expense report itself, which bills for her time on February 11, 2021 and on three separate dates in April before the trial began. (*Compare id.* (emphasis added), *with* Dkt. 403-12 at 3; *see also* Dkt. 349 (noting that voir dire commenced on April 6, 2021)). Furthermore, Plaintiff's filings make it impossible for the Court to determine the nature of Regalado's work and whether it was merely clerical. *Spegon*, 175 F.3d at 553 ("[T]he district court should disallow time spent on what are essentially 'clerical' or secretarial tasks."); *see also, e.g., Morjal*, 2013 WL 2368062, at *2 ("[T]ime spent organizing file folders, preparing document[s], assembling filings, electronically filing documents, sending materials, docketing or logging case events into an internal case tracking system, and telephoning court reporters is noncompensable."). Defendants will not be required to reimburse Williams for this expense.

24

### 8. Expenses for Process Servers

Defendant seeks $896.50 for the cost of engaging process servers in this case. (Dkt. 403-12 at 3). Fees for service are recoverable under 28 U.S.C. § 1920(1) but may not exceed the U.S. Marshals rate at the time that process was served. *See Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996); *see also, e.g.*, *Williams v. Fico*, 2015 WL 3759753, at *3–4 (N.D. Ill. June 15, 2015). The applicable rate currently used by the U.S. Marshals is $65 per hour, plus travel costs and any other out-of-pocket expenses. *See* 28 C.F.R. § 0.114(a)(3) (establishing fees for service of summons); 78 Fed. Reg. 59819 (setting effective date of October 30, 2013 for new rates).

Here, Defendant seeks $130.00 in service fees incurred by the U.S. Marshalls Service, and $766.50 in fees incurred by a private process server on at least three separate dates. (Dkt. 403-12 at 3). However, there is no indication of how long it took the private company to effectuate service, the amount charged per hour, or any travel costs or other out-of-pocket expenses. The Court is constrained to reduce those costs to $65.00 per line item so as not to exceed the U.S. Marshals rate in place at the time of service. *See, e.g.*, *Dockery v. Maryville Acad.*, No. 16-cv-6188, 2020 WL 9396486, at *1 (N.D. Ill. Feb. 26, 2020); *Serwatka v. City of Chi.*, No. 08-cv-5615, 2011 WL 2038725, at *3 (N.D. Ill. May 24, 2011) (collecting cases); *Trading Techs. Int''l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 984 (N.D. Ill. 2010) (awarding USMS rate for one hour of service where invoices "d[id] not indicate the amount of time required to effectuate service"). Accordingly, the court awards $325 for Plaintiff's service costs in total, including $130.00 billed by the U.S. Marshals and $65 for each of the three invoices from the private process server ($195.00 in total).

### 9. Plaintiff's Hotel Lodging Costs

Williams seeks reimbursement for hotel costs incurred during his trial between April 5 and April 16, 2021. (Dkt. 403-12 at 3 (requesting $1489.68 for hotel stay)). He argues that this is a

covered expense under Section 1920(3), which allows costs for *witnesses'* reasonable lodging expenses. (Dkt. 410 at 15 (citing *Majeske*, 218 F.3d at 825–26 (granting costs for "out-of-town witnesses' hotel rooms"))). Plaintiff explains that he lived in DeKalb, Illinois during the trial and "counsel needed him to stay in a hotel so that he could meet with counsel before and after trial days, including over the weekend." (Dkt. 410 at 15). He further notes that he was called as a witness by both parties at different times throughout the trial, requiring his continued presence in Chicago. (*Id.*). Defendants emphasize that Williams is not merely a witness, but the plaintiff in this litigation, and that he sought venue in the Northern District of Illinois. (Dkt. 408 at 25). They further argue that Williams should have traveled to Chicago as need, since he lives about an hour and fifteen minutes away in DeKalb. (Dkt. 395 at 4). Finally, Defendants assert that his hotel costs on April 9 and 10 were "entirely unnecessary to the trial" because they were weekend nights, when no trial would take place the following morning. (Dkt. 395 at 5).

Plaintiff concedes that "neither party cites authority directly on point" to the present case, where a litigant (rather than an attorney or a witness) seeks lodging costs. (Dkt. 410 at 15). That said, the Seventh Circuit in *Calderon v. Witvoet* determined that a plaintiff could *not* be reimbursed for travel costs related to his trial. 112 F.3d 275, 276 (7th Cir. 1997) (reversing district court's grant of such travel costs, stating they are not authorized by Section 1920). In addition, courts that have granted lodging expenses did so for witnesses traveling from "out-of-town," *see Majeske*, 218 F.3d at 825, and for attorneys who were "not local" and traveled from distances "more than two hours away," *see Capps v. Drake*, No. 3:14-cv-00441-NJR-DGW, 2019 WL 859779, at *8 (S.D. Ill. Feb. 22, 2019). The weight of these precedents disfavors Williams' request for hotel reimbursement. Absent any authority to the contrary, the Court finds that Plaintiff cannot recover the costs of his hotel stay because he is a litigant before the court – rather than a non-party witness

26

– and lived within a reasonable distance of the courthouse for him to travel there as desired or as needed.

### 10. Trial Transcript Expenses

Again, Section 1920(2) contemplates recovery of court reporter fees and transcriptions. Defendants do not contest Plaintiff's claim for these claimed expenses. Defendants are therefore ordered to pay Plaintiff's costs related to trial transcripts amounting to $429.30.

### 11. Travel Expense

Plaintiff claims $52.50 for travel expenses related to witness Gladney's deposition. (Dkt. 403-12). Travel expenses are typically reimbursable not as part of a bill of costs, but as attorneys' fees. *Jenkins*, 491 U.S. at 285–89; *Calderon*, 112 F.3d at 276. In any case, Defendants do not object to this expense and are therefore ordered to pay the $52.50 charge.

## B. Summary of Costs Awarded

Plaintiff requested $17,657.76 in taxable costs. (*See* Dkt. 403 at 11; Dkt. 403-12). As set forth above, his request is reduced by a total sum of $10,511.77. Thus, the Court awards Williams $7,145.99 in costs.

## <u>CONCLUSION</u>

Plaintiff's Motions for Fees and Costs [374, 403] is granted in part. Specifically, Plaintiff is awarded $435,142.10 in attorneys' fees and $10,511.77 in costs. In addition, the parties' motions seeking extensions of time [380, 396] and for leave to file motions instanter [395, 397] are granted.

Virginia M. Kendall
United States District Judge

Date: March 31, 2022